UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMES A. JACKSON,

    Plaintiff,

v.                                               Case No. 19-C-897

ANNETTE MCGIBBON, et al.,

    Defendants.

## SCREENING ORDER

Plaintiff James A. Jackson, who is currently serving a state prison sentence at Redgranite Correctional Institution and representing himself, filed a complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. Plaintiff has paid the $400.00 filing fee. Regardless of a plaintiff's fee status, the court is required to screen complaints brought by prisoners in accordance with 28 U.S.C. § 1915A.

### SCREENING OF THE COMPLAINT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997).

To state a cognizable claim under the federal notice pleading system, Plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain sufficient factual matter "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court accepts the factual allegations as true and liberally construes them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013). Nevertheless, the complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

## ALLEGATIONS OF THE COMPLAINT

Plaintiff alleges that a doctor ordered him to take 800mg of Gabapentin three times a day approximately every four hours at noon, in the evening, and at bedtime. This resulted in Plaintiff taking his medication at 12:30 p.m., 5:30 p.m., and 8:30 p.m. Plaintiff would retrieve his bedtime medication when "last call" was announced over the intercom, so he would not be taking his evening medication and bedtime medication too close together.

On October 22, 2018, Correctional Officer McGibbon informed Plaintiff that he could come to pill pass at 7:00 p.m. along with the other members of his housing unit. On October 23 and 24, 2018, Plaintiff arrived at pill pass with his unit and McGibbon dispensed his medication, resulting in Plaintiff taking his medication 1½ or 2 hours earlier than usual. On October 25, 2018, Plaintiff went to pill pass as ordered by McGibbon at approximately 7:00 p.m. C.O. Maas, who was distributing medication that day, advised Plaintiff that he was too early. Plaintiff responded that McGibbon told him that he was required to go to pill pass with his unit. Maas replied that the information on her computer instructed that she was not authorized to give Plaintiff his medications until after 7:50 p.m. and directed Plaintiff to return to his unit until 7:50 p.m. Plaintiff returned to

pill pass to obtain his medication at 7:50 p.m. as instructed. That same day, Plaintiff submitted a Health Services Request (HSR) to Health Service Manager (HSM) Thompson explaining that McGibbon instructed Plaintiff to take his medication at pill pass and indicating that taking his medication earlier resulted in stomach pain and very bad headaches. Plaintiff received his medication the next day without incident.

On October 28, 2018, Plaintiff submitted a second HSR informing the Health Services Unit that he had issues with his medication and noting that he had not received a response from HSM Thompson. On October 30, 2018, Plaintiff presented to an appointment with RN Katherine Thompson to address glaucoma-related concerns. Plaintiff claims that when he attempted to discuss his concerns about his medication, Nurse Thompson stated that he should speak to the doctor about changing the times that he took his medication. Plaintiff responded that McGibbon led him to believe that this conversation had already occurred with the doctor. Dr. Ibirogba Adebola also examined Plaintiff's eyes later that day. Plaintiff alleges that he attempted to inform Dr. Adebola that he was taking his bedtime dose of medication too close in time to his evening dose, but Dr. Adebola simply shook his head. That same day, Plaintiff wrote HSM Thompson a letter because he had not been seen by HSU about his headache and stomach pain. He stated that, although he told McGibbon that he had taken his medication during last call, McGibbon insisted that the time he needed to take his medication had changed. Plaintiff had asked Maas, McGibbon, Sergeant Craig Eckstein, C.O. Medrano, and C.O. Todd Zamzo if he could go to pill pass at last call rather than receive his medication with his unit.

On November 1, 2018, McGibbon called for Plaintiff to come to pill pass. At approximately 7:25 p.m. Plaintiff arrived and had a discussion with McGibbon regarding his pill pass time. McGibbon suggested that Plaintiff send in an HSR about his concerns. Plaintiff advised McGibbon

3

that he had already submitted an HSR and told McGibbon that the status of his request was confidential. McGibbon stated that Plaintiff would be required to go to pill pass with his unit, at which point he could either take or refuse his medication. If he failed to go to pill pass at that time, he would receive a conduct report.

Plaintiff sent another HSR to HSU staff on November 1, 2018, informing them about his conversation with McGibbon. Plaintiff also asked if the doctor wanted him to take his medication two hours apart, even though it caused him stomach pain and very bad headaches. The following day, RN Katherine Thompson responded to the HSR, "The order states PM + bedtime so you would come with your unit at these times. We can discuss changing the order to different times at your request." Compl. ¶ 29, Dkt. No. 1 at 10. Plaintiff did not request that his medication pill pass times be changed because that is what the doctor had prescribed.

On November 2, 2018, Plaintiff submitted an inmate complaint alleging staff misconduct. The next day, he sent an email to the H-east housing unit security supervisor stating, "I wrote a (HSR) to health service manager without a response on or about 10/25/18 concerning my medication being given to me too soon. It causes stomach pains and headaches. I do not wish to go against Doctor's or Gabapentin's instruction." *Id.* ¶ 32.

On November 5, 2018, Plaintiff received a response to his October 25, 2018 HSR. HSM Thompson advised that the Gabapentin should be taken in the morning, at noon, and at bedtime, rather than at noon, in the evening, and at bedtime. Later that day, Plaintiff sent an HSR to HSU, stating that he had not taken his medication at bedtime for several days and he experienced withdrawal symptoms including cramps; pain in his feet, legs, and back; sleeplessness; anxiety; and tremors. Nurse Klenke responded to this request on November 6, 2018, indicating that HSM

4

Thompson changed the order by eliminating the evening dose and requiring that Plaintiff take his medication in the morning, at noon, and at bedtime.

On November 6, 2018, Plaintiff submitted another HSR requesting an appointment to speak with a doctor about his medication. He stated that the change that had been put in place did not benefit his condition. The next day, Nurse Thompson responded that he had an appointment scheduled for early January. Plaintiff submitted another HSR on November 13, 2018, asking to see a doctor because of pain in his lower back, legs, buttock, hands, and feet. Nurse Klenke responded to the HSR the following day stating, "You are scheduled MD." *Id.* ¶ 45.

On December 12, 2018, Plaintiff sent another HSR informing staff that he wanted to see a doctor because his medication was not managing his pain as it had been. Nurse Thompson responded that Plaintiff's January 6, 2019 appointment with the doctor was rescheduled for December 28, 2018. Nurse Practitioner Wilkey saw Plaintiff on December 28, 2018, and ordered that Plaintiff's Gabapentin should be administered at noon, in the evening, and at bedtime, as originally ordered by the doctor.

### The Court's Analysis

Plaintiff claims that C.O. McGibbon, HSM Thompson, Dr. Adebola, and Nurse Thompson were deliberately indifferent to his serious medical needs that resulted from Plaintiff taking his medication between 1½ to 2 hours earlier than usual after the schedule for dispensing his medication had changed. The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. It imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that inmates receive adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official's deliberate indifference to a prisoner's medical needs or to a substantial risk of serious harm violates the Eighth Amendment. *Id.* at 828; *see also Estelle v.*

5

*Gamble*, 429 U.S. 97, 104–05 (1976). This does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.

To state a claim based on deficient medical care, a plaintiff must allege that he had an objectively serious medical condition and that the defendants were subjectively aware of and consciously disregarded that condition. *Farmer*, 511 U.S. at 837. An Eighth Amendment violation does not arise simply because a prisoner has a different opinion than prison medical personnel about the kind of medical care that is adequate. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Deliberate indifference requires more than negligence; it requires that the official know of, yet disregard, an excessive risk to the inmate's health or safety. *Farmer*, 511 U.S. at 835, 837. In other words, Plaintiff must allege that the defendants knew about his needs and "could have prevented [them] but did not." *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009); *see also Pittman ex rel. Hamilton v. Cty. of Madison, Ill.*, 746 F.3d 766, 776 (7th Cir. 2014) ("An official must be 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and the official 'must also draw the inference.'" (quoting *Higgins v. Corr. Med. Servs. of Ill., Inc.*, 178 F.3d 508, 511 (7th Cir. 1999))).

In this case, the fact that Plaintiff was required to take his medication earlier than he wanted to take it does not amount to cruel and unusual punishment. As the Ninth Circuit explained in *Rodriguez v. Lilienthal*:

> We recognize [the inmate's] serious medical needs but agree with the district court that [the prison officers] did not treat those needs with deliberate indifference. We must afford prison officials great deference in executing policies that are necessary to preserve internal order. . . . Recognizing the institutional concerns of having to dispense medications to hundreds of inmates each night, we must conclude that [the prison officers'] role in imposing the new schedule does not amount to cruel and unusual punishment, especially in light of the evidence that the therapeutic value of [the inmate's antidepressant] was not reduced by this change [in schedule]. Furthermore, at most [the inmate and the prison officers] have a difference of

> opinion as to the appropriate scheduling of drug distribution and his medical care, which is not actionable . . . . [The inmate] received his medication nightly, and the therapeutic effect was not diminished by the earlier time schedule.

15 F.3d 1089, 1993 WL 530438, at *3 (9th Cir. Dec. 21, 1993). The court finds this reasoning persuasive. Plaintiff has failed to state a claim of deliberate indifference against the defendants because he has not alleged that the defendants' response to his medical need was constitutionally deficient. Plaintiff has been prescribed Gabapentin for treatment of his pain. Plaintiff has not alleged that the defendants prevented him from receiving his medication, only that he was required to take his medication at an earlier time. In addition, the complaint does not contain any allegations that the Gabapentin was not effective in controlling Plaintiff's pain when it was consumed earlier than he had previously taken it. Therefore, Plaintiff has failed to state a claim of deliberate indifference based on the fact that he was required to take his medication earlier than he had in the past.

To the extent Plaintiff claims that the defendants were deliberately indifferent to his headaches and stomach aches, Plaintiff does not allege that he told C.O. McGibbon or Dr. Adebola that he suffered from stomach aches and headaches as a result of taking his medication earlier. In short, the defendants cannot be said to have been deliberately indifferent to his serious medical needs because the complaint does not contain any allegations that these defendants had knowledge of Plaintiff's headaches and stomach aches or were "aware of facts from which the inference could be drawn" that serious harm exists. *Farmer*, 511 U.S. at 837. Accordingly, Plaintiff has failed to state a deliberate indifference claim against McGibbon and Dr. Adebola.

In addition, Plaintiff has not stated a deliberate indifference claim against HSM Thompson or Nurse Thompson. Plaintiff submitted an HSR on October 25, 2018 to HSM Thompson asserting that taking his medication earlier resulted in stomach pain and very bad headaches. Three days

later, Plaintiff attempted to discuss his medication concerns at an appointment with Nurse Thompson, and she told him to speak to the doctor at the upcoming appointment later that day about changing the times he took his medication. Plaintiff filed an HSR on November 1, 2018, asking if he should take his medication two hours apart, even though it caused stomach pain and headaches. Although Nurse Thompson responded the following day stating that they could discuss changing the order to different times at Plaintiff's request, Plaintiff did not follow up and request that his medication pill pass times be changed.

Approximately one week after Plaintiff submitted the October 25, 2018 HSR, HSM Thompson responded to Plaintiff's concerns and ordered that Plaintiff instead take the Gabapentin in the morning, at noon, and at bedtime. The day after HSM Thompson changed his medication time, Plaintiff submitted an HSR indicating that the change did not benefit his condition. Nurse Thompson responded that he had an appointment scheduled with a doctor for early January. When Plaintiff submitted another HSR informing HSU that he wanted to see a doctor because his medication was not managing his pain, Nurse Thompson responded that his January appointment was moved up to December 28, 2018. Plaintiff met with Nurse Practitioner Wilkey on December 28, 2018, who ordered that Plaintiff's Gabapentin be administered at noon, in the evening, and at bedtime.

Plaintiff does not allege that he had any further communication with HSM Thompson or Nurse Thompson about his medication schedule or further complaints of headache and stomach ache once HSU issued the new medication order. Because the allegations in the complaint demonstrate that HSM Thompson and Nurse Thompson responded to Plaintiff's concerns and were anything but indifferent to Plaintiff's medical needs, Plaintiff's deliberate indifference claim against these defendants will also be dismissed.

Plaintiff has provided no arguable basis for relief, having failed to make any rational argument in law or fact to support his claims. *See House v. Belford*, 956 F.2d 711, 720 (7th Cir. 1992) (quoting *Williams v. Faulkner*, 837 F.2d 304, 308 (7th Cir. 1988), *aff'd sub nom. Neitzke v. Williams*, 490 U.S. 319 (1989)).

**IT IS THEREFORE ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) **for failure to state a claim**.

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. §1915(g).

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Green Bay, Wisconsin this  1st  day of July, 2019.

> s/ William C. Griesbach
> William C. Griesbach, Chief Judge
> United States District Court

---

This order and the judgment to follow are final. Plaintiff may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. § 1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.